UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| TEXTRON FINANCIAL CORPORATION, | ) | |
|---|---|---|
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. 2:09-cv-275 |
| METRO LINCOLN-MERCURY, INC., DEAN E. TRENT, and MARTHA T. TRENT, | ) ) ) ) | Judge Mattice |
| *Defendants.* | ) ) | |

## **MEMORANDUM AND ORDER**

Before the Court is Plaintiff Textron Financial Corporation's Motion for Summary Judgment [Court Doc. 12]. Plaintiff asserts that it is entitled to summary judgment because there are no genuine issues of material fact in dispute regarding the amount of deficiency owed to it as a result of the repossession and subsequent sale of collateral used to secure a Credit Agreement entered into by Plaintiff and Defendants.

For the reasons explained below, Plaintiff's Motion for Summary Judgment [Court Doc. 12] will be **DENIED**.

## **I.  STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th

Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Anderson*, 477 U.S. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, the Court must, on a motion for summary judgment, determine whether a jury could reasonably find by a preponderance of the evidence that the plaintiff's factual contentions are true. *See id.* If

the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.  FACTS

The facts, viewed in the light most favorable to Defendants, are as follows.

Plaintiff loaned money to Defendant Metro-Lincoln (the "corporate Defendant") on June 8, 2007 pursuant to a Credit and Security Agreement ("Agreement"). (Court Doc. 1, Compl. ¶ 9; Court Doc. 1-1, Agreement.) The Agreement granted Plaintiff a security interest in certain equipment of Defendant Metro-Lincoln, namely recreational vehicles, campers, and motor homes ("campers"). (Compl. ¶ 10; Court Doc. 21-1, Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. at 2.) Defendants Dean Trent and Martha Trent, who will be referred to separately as necessary, or collectively as "individual Defendants," also signed Guaranty Agreements on the same day, indicating that they would be responsible for any indebtedness to Plaintiff that might result from a default under the Agreement. (Compl. ¶ 11; Court Docs. 1-2 & 1-3.)

In 2009, Defendants defaulted on the Agreement by failing to make the required payments. (Compl. ¶ 12.) Plaintiff demanded the amount of remaining debt due under the Agreement and Defendants could not repay the amount. (*Id.* ¶¶ 13-14.) As a result of the default, the campers that served as security for the Agreement were voluntarily released

to Plaintiff by Defendant Dean Trent after he relied on certain statements of Plaintiff's representative. (Defs.' Mem. at 3; Court Doc. 14-1, Voluntary Release.) After Plaintiff took possession of the collateral, the manufacturer repurchased eight of the 31 campers and Plaintiff sold the remaining vehicles at private sales. (Compl. ¶ 15; Defs.' Mem. at 4.) The proceeds from the repurchase and sales were applied to the outstanding debt balance under the Agreement, but the balance was not completely repaid by these sales. (*Id.*) The remaining balance due to Plaintiff is $216,875,69. (*Id.* ¶ 16.)

Plaintiff filed this lawsuit on December 2, 2009 and asserts two counts–one to reach Defendant Metro Lincoln pursuant to the terms of the Agreement, and one to reach the individual Defendants, subject to the Guaranties executed that require repayment of any balance under the Agreement. (*Id.* ¶¶ 17-24.) Plaintiff seeks to recover the outstanding debt Defendants allegedly owe, in addition to the costs of collection. (*Id.*)

### III. ANALYSIS[1]

Plaintiff portrays this as a very simple matter with no genuine issues of material fact. Plaintiff asserts that it is entitled to judgment in its favor because the Agreement obligates Defendants to pay the balance remaining. (Court Doc. 13, Pl.'s Mem. in Supp. of Mot. for Summ. J. at 2.) After Defendants defaulted and voluntarily surrendered the collateral, Plaintiff disposed of the collateral in various ways, but the amounts recovered from these sales left a substantial deficiency which Defendants must repay pursuant to the terms of the Agreement. (*Id.* at 3.) Plaintiff claims that these sales were commercially reasonable

---

[1] The Court notes that Defendants raised a choice of law issue by stating that Plaintiff briefed and relied on Tennessee law even though the Agreement and Guaranties contain choice of law provisions indicating that the law of Rhode Island would govern the contracts. Because Plaintiff relied on Tennessee law, Defendants assert that Plaintiff has waived this term of the contract and they do not object to the applicability of Tennessee law. (Defs.' Mem. at 6-7.)

because every item was sold for at least 55% of the original financed amount, and some were sold for up to 90% of the original financed amount, such that Plaintiff was able to recover 64.5% of the balance due. (*Id.*) Plaintiff asserts that there is no dispute in regard to the existence of a contract or the fact that Defendants defaulted by failing to satisfy their obligations under the contract. (*Id.* at 6, 8.) Indeed, Defendants have admitted their default, Plaintiff's demand for the full balance, and their failure to pay that balance. (Compl. ¶¶ 12-14; Court Doc. 7 ¶¶ 12-14.) Plaintiff argues that Defendants' affirmative defenses are without merit because the notices sent to Defendants regarding the sale of collateral were commercially reasonable and the disposition of the collateral was commercially reasonable in every respect. (Pl.'s Mem. at 8-10.) Plaintiff claims that it solicited a number of bids for the items to be sold and that the resale prices, while apparently not acceptable to Defendants, were not so low as to be commercially unreasonable. (*Id.* at 9-10.)

Defendants argue that there are several genuine issues of material fact which preclude the Court from granting judgment to Plaintiff as a matter of law. Defendants claim that Plaintiff has the burden to establish that its actions were commercially reasonable and that it has not properly demonstrated compliance with Article 9 of the Uniform Commercial Code, as codified in the Tennessee Code Annotated. (Defs.' Mem. at 7-8.) Specifically, Defendants assert that there are genuine issues of material fact as to whether the notice of the disposition of the collateral was properly sent to Defendants, whether the sale of the collateral was commercially reasonable, and whether Plaintiff acted in good faith to dispose of the collateral pursuant to the duty of good faith and fair dealing inherent in the contract. (*Id.* at 2, 6.) The Court will address each of Defendants' contentions separately.

### A. Notice of Disposition

At the time of Plaintiff's Motion for Summary Judgment and Defendants' Response, the notification letters sent to Defendant Dean Trent and Defendant Martha Trent were attached to Plaintiff's Motion, but there was no evidence of a notification letter sent to the corporate Defendant. Therefore, there were essentially two issues as to the notice of disposition–the absence of notice to the corporate Defendant and the sufficiency of the notice to the individual Defendants. Because the individual Defendants never actually received notice of the sales of collateral and Plaintiff never sent the corporate Defendant notice, Defendants argued that the notice of disposition was not commercially reasonable and was not in compliance with Tennessee law. (Defs.' Mem. at 8-9.)

After the parties had fully briefed Plaintiff's Motion, however, Plaintiff filed a Supplemental Affidavit by Adrienne Greene. (Court Doc. 25-1, Greene Aff.) Attached to this affidavit is the notice of disposition sent to the corporate Defendant and the return receipt, which indicates that the notice was received on November 17, 2008. (Court Doc. 25-1 at 4-5.) This affidavit is proper under the Court's Local Rules, as Plaintiff only recently located the misfiled notice of disposition. (*Id.* ¶ 6; E.D.TN LR 7.1(d).) In addition, the notification of disposition appears to be properly executed and appears to have been signed for and received by Defendant Dean Trent as president of the corporate Defendant. Accordingly, the corporate Defendant was properly served with a notification of disposition and there is no genuine issue of material fact as to whether Plaintiff complied with the statute requiring notification to this debtor.

As to the individual Defendants, Defendants acknowledge that Plaintiff mailed a separate notice to both Defendant Dean Trent and Defendant Martha Trent, but assert that

the certified mail receipt shows that neither letter was ever signed for, and the envelopes are marked "Return to Sender - Unclaimed"–rendering the notice insufficient. (Court Doc. 14-3.) Defendants claim that this constitutes a failure to provide notice pursuant to the statute, which reads that a "secured party that disposes of collateral under § 47-9-610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition." Tenn. Code Ann. § 47-9-611(b). Subsection (c) names the debtor and secondary obligors, among others.

The law in Tennessee, however, does not require actual receipt of this notification. The Tennessee Supreme Court recently held that "so long as the notification is 'sent' within the meaning of Article 9, the creditor does not need to take additional steps to determine whether or not that notification has been received." *Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896, 902 (Tenn. 2007). The *Wimmer* court further noted that "the language of the statute is clear. Tennessee Code Annotated section 47-9-611 (Supp.2006) only requires a creditor to send proper notification to the debtor and does not require the receipt of that notification." *Id.* Moreover, the definition of "send" in the statute merely states "to deposit in the mail . . . with postage or cost of transmission provided for, addressed to any address reasonable under the circumstances." Tenn. Code Ann. § 47-9-102(74)(A). As to the notice to Defendant Dean Trent and Defendant Martha Trent, therefore, the Court finds Defendants' argument unavailing. Plaintiff has provided proof that notice was sent, and the fact that it was not received is of no consequence under Tennessee law. The Court finds that the notice to the individual Defendants was also in compliance with the applicable statutes.

There is no merit to Defendants' contentions that Plaintiff failed to comply with the

notice requirements set forth in Article 9 as codified in the Tennessee Code. Accordingly, the Court rejects Defendants' contention that genuine issues of material fact exist as to improper notification of the disposition.

### B. Disposition of Collateral

Defendants also assert that there is a genuine issue of material fact as to whether the disposition of collateral was commercially reasonable because Plaintiff has provided no information regarding common practices in the industry, the efforts it made to determine if private sales would be reasonable, other sale options it considered, the process for receiving bids, the bids or amounts received for any of the items, the times, dates, or terms of the sales, and other pertinent information about the collateral, such as the condition of various items or the ability of prospective buyers to inspect the items before purchase. (Defs.' Mem. at 13-17; Court Doc. 18, Trent Aff. ¶ 13.)

The Tennessee Code Annotated states that:

> Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one (1) or more contracts, as a unit or in parcels, and at any time and place and on any terms.

Tenn. Code Ann. § 47-9-610(b). This requirement is further outlined in Tennessee Code Annotated § 47-9-627(b), which reads:

> (b) Dispositions That Are Commercially Reasonable. A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
>
> (1) in the usual manner on any recognized market;
>
> (2) at the price current in any recognized market at the time of the disposition; or

> (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

Tenn. Code Ann. § 47-9-627(b).[2] In addition, Tennessee courts have identified several factors to consider when making the determination as to commercial reasonableness: namely, the type of collateral, the condition of the collateral, the number of bids solicited, the time and place of the sale, the purchase price received, and any special circumstances. *In re Frazier*, 93 B.R. 366, 368 (M.D. Tenn. 1988).

The Court knows the following about the disposition of collateral in the instant case. The original Affidavit of Adrienne Greene, a Recovery Specialist for Plaintiff, states that the manufacturer repurchased some of the collateral and "other units were sold at private sales." (Court Doc. 14, Greene Aff. ¶ 9.) All the units were sold or repurchased for at least 55% of the original financed amount, and some units were sold for 90% of the original financed amount. (*Id.* ¶ 10.) Plaintiff recovered 64.5% of the original financed amount after selling all units. (*Id.* ¶ 11.) The Court also has a fairly generic list of what appears to be all items included in the collateral with the original financed amount for each unit. (Court Doc. 14-1.) The Court has a letter from Plaintiff to Thor Industries/Keystone, the manufacturer, in which Plaintiff lists eight of the items that it requested the manufacturer re-purchase along with the invoiced amount for each item. (Court Doc. 14-2.) The Court has the notices that were unsuccessfully sent to the individual Defendants and successfully

---

[2] Subsections (b)(1) and (b)(2) are inapplicable to this case because, as the commentary to this statute explains, a "recognized market" is only one "in which there are standardized price quotations for property that is essentially fungible, such as stock exchanges." Tenn. Code Ann. § 47-9-627 cmt. 4.

sent to the corporate Defendant, which state that "[t]he Collateral will be sold at private sale on or after 10 days from the date of this letter. All interested parties are invited to contact TFC for further information and/or to arrange for inspection of the Collateral prior to the above sale date." (Court Doc. 14-3 at 1, 4; Court Doc. 25-1 at 4.) Finally, the Court has an affidavit submitted by Defendants, which states the financed amount and the amount received by Plaintiff for some of the items, presumably all but the eight items repurchased by the manufacturer.[3] (Court Doc. 20, Nichols Aff. ¶¶ 11-29.)

Plaintiff has provided no other information about the disposition of this collateral. The Court does not have any specific information about the individual units, the date, time or place of the private sales, when they occurred in relation to the sending of the notification letters,[4] the process by which Plaintiff conducted the sales, or the number of bids received for each unit and their amounts. Moreover, the Court has no information concerning whether Plaintiff's private sales were made in conformity with reasonable commercial practices among recreational vehicle dealers.[5] Plaintiff claims that Defendants'

---

[3] Curiously, Plaintiff has not provided the Court with any information regarding the price received for each unit. This information is before the Court only because of the affidavit submitted by Defendants.

[4] The date on the notification letters is November 14, 2008, and the letters state that the private sale would occur within 10 days of the date of that letter. (Court Doc. 14-3.) In Mark Addington's affidavit, however, he states that he contacted Plaintiff from "mid-November 2008 up and until mid-January 2009 in order to determine the whereabouts of Collateral and the condition or terms on which Collateral would be sold." (Addington Aff. ¶ 15.) In David Nichols' affidavit, which sets forth the final sale price for each item, he appears to indicate the fair market value for November 2008, but does not provide the specific date of sale. (Nichols Aff. ¶11-29.) Therefore, it is impossible for the Court to determine when the sales took place and if they did in fact occur within 10 days of the notification letter.

[5] This lack of information is not unlike the situation presented in a case involving the same Plaintiff and the disposition of a significant number of boats, *Textron Financial Corp. v. Lentine Marine Inc.*, 630 F. Supp.2d 1352 (S.D. Fla. 2009), which Defendants cite in support of their contention that the disposition was not commercially reasonable. In *Lentine*, the court discussed purchase contracts for the items that had been sold and stated as follows:

information about the way Ford Motor Company handled a similar repossession of collateral is irrelevant, but the Court disagrees. (Defs.' Mem. at 13-15; Pl.'s Reply at 5-6.) This comparison very well could be relevant to the commercial reasonableness inquiry because the statute referenced above contemplates that a commercially reasonable sale is made "in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." Tenn. Code Ann. § 47-9-627(b). Plaintiff has not provided any evidence which would establish this conformity, but Defendants have offered evidence of Ford Motor Company's practice, which may establish that Plaintiff's disposition was not made in conformity with reasonable practices. (Addington Aff. ¶¶ 18-24.)

---

> Plaintiff, however, provides no facts about these contracts, or how such contracts are generally formulated in the marine retail business, that would permit the Court to find that their contents or formulation are in conformity with reasonable commercial practices among dealers in the industry. Plaintiff has not submitted examples of these contracts, and Plaintiff's exhibits do not explain, for instance, how the re-purchase prices in the contracts were determined. Nor has Plaintiff submitted factual evidence, aside from the opinion of Mr. Layton, supporting its claim that the prices obtained by reselling to manufacturers are higher than those that could be obtained by reselling them by other means.
>
> Plaintiff also submits affidavits from representatives of Treasure Coast and Legendary Marine, testifying on the basis of their experience in the marine retail industry that they received fair market value for the items they resold. . . . But these affidavits suffer from a similar defect as Plaintiff's claims about the manufacturer's repurchase agreements: they do not include specific factual information about the sales or about the current marine retail market that would permit the Court to find as a matter of law that the sales were in conformity with reasonable commercial practices among marine dealers, that every aspect of the sales were commercially reasonable, or that the resale prices represented fair market value.

*Id*. at 1359-60.

Plaintiff further states that "Defendants' [sic] have presented no justifiable basis for their contention that the private sales of the Collateral were not commercially reasonable. Defendants' [sic] must come forward with specific facts to demonstrate that there is a genuine issue for trial regarding the commercial reasonableness of the sales of the Collateral." (Pl.'s Reply at 6.) Yet, "[t]he burden of proving that a sale of collateral is commercially reasonable under these statutes is on the secured party seeking the deficiency judgment." *Farmers & Merchants Bank v. Dyersburg Prod. Credit Ass'n*, 728 S.W.2d 10, 16 (Tenn. Ct. App. 1986). Defendants, therefore, do not have the burden of establishing that the disposition was *not* commercially reasonable.[6] Tennessee law is clear that the burden is on Plaintiff, the secured party seeking the deficiency judgment, to prove that the sales were commercially reasonable.

In a final attempt to undermine Defendants' argument in this regard, Plaintiff portrays the dispute as one merely about the price obtained for the collateral. (Pl.'s Reply at 5.) It is true that the price alone is not determinative of commercial reasonableness. "The fact that a greater amount could have been obtained . . . at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the . . . disposition was made in a commercially reasonable manner." Tenn. Code Ann. § 47-9-627. The Court finds, however, that the attack of a deficiency amount will logically always have its basis in the

---

[6] Indeed, and particularly in this case, it would be illogical to place this burden on the debtor when the secured party is the entity with the most knowledge about the disposition of the collateral. Nonetheless, the Court notes that Defendants in fact *have* provided specific facts to establish that this is an issue for trial - Defendants have pointed out deficiencies in the information provided by Plaintiff and Defendants have also provided facts regarding a disposition of collateral under similar circumstances by Ford Motor Company, which netted higher prices than the largely unknown sale processes conducted by Plaintiff.

price received for the collateral.  After all, if the sale was completely successful, no deficiency would exist, no lawsuit would be filed, and the debtor would have no need to contest the reasonableness of the sale.  Nonetheless, the Court further finds that Defendants have placed various aspects of commercial reasonableness at issue besides price and have done more than simply claim that Plaintiff could have received more money for these items.  Defendants have identified several issues with the lack of information provided by Plaintiff, and these issues speak directly to the factors the Court must consider in determining whether the disposition of the collateral in this case was commercially reasonable.

The Court finds that Defendant has placed the commercial reasonableness of the disposition at issue, and Plaintiff has not provided the Court with sufficient facts and information from which to determine whether the disposition of the collateral was commercially reasonable.  Plaintiff has therefore failed to meet its burden, and summary judgment on this issue would not be appropriate.

### C. Good Faith and Fair Dealing

Defendants finally argue that Plaintiff violated the implied duty of good faith and fair dealing in the actions it took with regard to the Agreement for two reasons.  First, Defendants claim that Plaintiff acted in bad faith because one of Plaintiff's representatives made misrepresentations to Defendant Dean Trent concerning the consequences of voluntarily surrendering the collateral, and the actual result of the voluntary surrender caused damage to Defendants.  (Defs.' Mem. at 17-18.)  Second, after the voluntary surrender of the collateral, Plaintiff did not respond to several requests by Defendants for information about the planned disposition of the collateral and the terms of the sales. (*Id.*

at 19.) Defendants assert that there is a genuine issue of material fact as to whether Plaintiff willfully failed to provide Defendants with this information, thereby hindering Defendants' ability to protect their interests in the collateral. (*Id.*) Plaintiff offers no specific response to this argument by Defendants, stating only that any misrepresentations as to the consequences of the voluntary surrender of the collateral are irrelevant, have nothing to do with Defendants' breach of the Agreement, and have no impact on the issues ripe for summary judgment. (Pl.'s Reply at 6.)

"[A]n implied duty of good faith and fair dealing is recognized in every contract in its performance and enforcement." *ACG, Inc. v. Southeast Elevator, Inc.*, 912 S.W.2d 163, 168 (Tenn. Ct. App. 1995). Each party to a contract is obliged "to restrain from doing any act that would delay or prevent the other party's performance of the contract." *The Wil-Helm Agency v. Lynn*, 618 S.W.2d 748, 751-52 (Tenn. Ct. App. 1981).

Defendant first argues that the misrepresentations made in the course of encouraging Defendant Dean Trent to voluntarily surrender the collateral violated Plaintiff's duty of good faith. (Defs.' Mem. at 18.) According to Defendants, Ray Lefler, a representative of Plaintiff, told Defendants that the manufacturer would repurchase most, if not all, of the campers, and that the manufacturer would continue to provide vehicles and parts to the corporate Defendant after the repossession. (*Id.*) As a result of these statements, Defendant Dean Trent agreed to voluntarily release the collateral, but the manufacturer then only repurchased eight of the 31 vehicles and no longer provided the corporate Defendant with parts to service the vehicles. (*Id.*) Because the corporate Defendant lacked the parts necessary to maintain its profitable service department, the

department closed, increasing Defendants' risk under the Agreement and Guaranties. (*Id.* at 18-19.)

The Court is not swayed by this argument because it appears that the Agreement contemplated a harsher result, and any misrepresentations by Plaintiff or its representative did not constitute bad faith in the execution of the contract. Essentially, after Defendants failed to make payments pursuant to the Agreement, they had no specific rights to the collateral and Plaintiff could have repossessed it in a variety of ways, without Defendants' permission or release.[7] The contract allowed Plaintiff to take possession of the collateral, and inducing Defendant Dean Trent to voluntarily release the collateral was just another way of reaching the same result. The consequences of the voluntary surrender–the manufacturer's unwillingness to provide parts for other campers–might have occurred with any repossession of the collateral, and Plaintiff had no control over the actions of a third party company. Although Defendants state that they might have obtained alternate financing and kept the collateral instead of voluntarily surrendering those items, it is clear from the Agreement that Plaintiff had the right to repossess these items after Defendants

---

[7] The Agreement reads, in part:

> Debtor agrees that Secured Party may, by itself or through an agent, without notice to any person and without judicial process of any kind, enter into any premises or upon any land owned, leased or otherwise under the apparent control of Debtor where Secured Party believes the Collateral may be, and disassemble, render unusable and/or repossess all or any items of the Collateral. Debtor expressly waives all rights to possession of the Collateral after default and all claims for injuries suffered through or loss caused by such entering and/or repossession by Secured Party. Debtor shall, upon demand of Secured Party, assemble the Collateral and return it to Secured Party at a place designated by Secured Party.

(Agreement ¶ 11.)

defaulted, and the method they chose does not constitute bad faith even if Mr. Lefler made misleading statements about the consequences. (Defs.' Mem. at 18.) If Mr. Lefler had not made these statements and Defendant Dean Trent had not agreed to sign the voluntary release form, Plaintiff still had the right to repossess the collateral in another manner, with possibly the exact same result. In addition, as Plaintiff points out, these statements by Mr. Lefler cannot modify the contract, as the Agreement specifically states that "[n]o provision of this Agreement shall be varied or modified by any prior or subsequent statement, conduct or act of any of the parties, except by a writing specifically referring to this Agreement and signed by all parties hereto." (Agreement ¶ 12; Pl.'s Reply at 4-5.) The Court finds that there is no genuine issue of material fact as to whether Plaintiff acted in bad faith in executing the contract by virtue of Mr. Lefler's remarks.

Defendants also argue that there is a genuine issue of material fact as to whether Plaintiff acted in bad faith by willfully failing to inform Defendants of the details surrounding the disposition of collateral. (Defs.' Mem. at 19.) Defendants assert that they contacted Plaintiff multiple times in an attempt to learn the terms of the sales of the collateral and Plaintiff never responded to their inquiries. (*Id.*; Addington Aff. ¶ 15.) Although this inquiry is somewhat tied to the issue of fact the Court has already identified as to the commercial reasonableness of the sales, the Court finds that this question of bad faith is a separate issue of material fact. Plaintiff's failure to provide information about the disposition to Defendants at or near the time of the disposition may indeed have been very significant and has a different impact and consequence than Plaintiff's failure to provide sufficient information to the Court regarding notice and disposition of the collateral at the summary judgment stage.

The importance of this information to the Court and Defendants is very different. The Court merely needs this information to make a determination about reasonableness from an objective perspective, following specific guidelines outlined in statutes and case law. Defendants, however, needed information about the upcoming sales–at the time of those sales–so they could have the opportunity to protect their interest in the campers by determining whether the proposed sales were reasonable and, if desired, to redeem their interest in the collateral. Because there is an inherent difference in the consequence that follows from not providing information to the Defendants and the Court about the disposition of the collateral, the bad faith inquiry is separate from the Court's need to obtain more facts about the commercial reasonableness of the sales. Before the Court can make a determination as to bad faith, however, the Court needs more facts about Defendants' attempted contacts with Plaintiff, the time frame of these contacts in relation to the dates of the private sale or sales, Plaintiff's awareness of these contacts, and whether Plaintiff responded in any manner. Therefore, a separate issue of material fact exists as to whether Plaintiff's failure to inform Defendants of the details of the sales after multiple requests constituted bad faith in Plaintiff's execution of the contract.

## IV.  CONCLUSION

The Court concludes that there are genuine issues of material fact which must be addressed at the bench trial as to whether the disposition of collateral by Plaintiff was commercially reasonable and whether Plaintiff violated the duty of good faith and fair dealing in the execution of the Agreement by failing to provide Defendants with any information about the disposition of collateral after several requests. Accordingly, the Court will not grant summary judgment to Plaintiff.

For the reasons outlined above, Plaintiff's Motion for Summary Judgment [Court Doc. 12] is **DENIED**.

**SO ORDERED** this 16th day of November, 2010.

                                                                               */s/Harry S. Mattice, Jr.*
                                                                           HARRY S. MATTICE, JR.
                                                                UNITED STATES DISTRICT JUDGE